**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
|    vs. | )   **Case No.  4:18-CR-51 CDP/PLC** |
| | ) |
| **DAVID HUGHES,** | ) |
| | ) |
|      **Defendant.** | ) |

### Report and Recommendation

This matter is before the Court[1] on Defendant's motion to suppress statements [ECF No. 21].  The Court held an evidentiary hearing on Defendant's motion and the parties filed post-hearing memoranda [ECF Nos. 37 and 40].  Based upon the arguments of the parties and the evidence adduced at the hearing, the Court recommends denial of Defendant's motion.

### Background

The Government charged Defendant with three counts of violation of 18 U.S.C. Section 641 (theft of government funds) [ECF No. 1].  The Government alleged that Defendant, who was deemed eligible for the receipt of Social Security disability payments in 1988, concealed from the Social Security Administration: receipt of a $112,000 insurance settlement; the ability to work five days a week in his clothing store; purchase of a Cadillac Escalade; ownership of a bank account and receipt of a check from the Rebuild North County Fund.  The Government further alleged that Defendant fraudulently received three Social Security checks for $733.00 each (Counts 1, 2 and 3).

---

[1] This matter is before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. Section 636(b).

Defendant filed a Motion to Suppress Statements on the grounds that: (1) he was subjected to a custodial interrogation without agents advising him of his Miranda[2] rights; and (2) his statements were involuntary as a result of his intellectual disability.  In his post-hearing memorandum, although Defendant reiterates that his statements were involuntary because of his "low intelligence," he appears to alter his argument with respect to Miranda warnings, contending that because he believed he was in custody, he was entitled to Miranda warnings.

The Government opposes Defendant's motion on the grounds that Defendant was not in custody and therefore was not entitled to Miranda warnings.  The Government also rejects the assertion that Defendant's diminished mental capacity either caused him to believe that he was in custody or independently rendered his statements involuntary.

## Facts

### A.  The arresting agents

#### 1.  Christopher Alexander

Christopher Alexander, a special agent with the Social Security Administration Office of Inspector General ("OIG") along with Agent Joel Ferris, also of the Social Security Administration OIG, interviewed Defendant at Defendant's business, King David Fashions, in August 2015.  The business was a clothing shop.  The agents conducted the interview in mid-day.  The agents did not advise Defendant of his Miranda rights prior to the interview.

The two agents entered Defendant's business through an open front door.   The door remained unlocked throughout the exchange.  Both agents were armed but did not display their weapons.  Defendant was standing behind a counter as the agents approached, and remained in that area during the interview.  The agents identified themselves as special agents with the Social

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

Security Administration.  Agent Ferris advised that the agents wished to discuss matters related to SSI (Supplemental Security Income).  At the commencement of the discussion, Agent Ferris asked if Defendant would consent to an audio recording of the interview.  Defendant declined.

Initially, Defendant stated "he didn't want to talk about it."  Agent Ferris further explained that "[Defendant] didn't have to answer any questions but he wanted to explain to him the information, evidence SSA had . . . relevant to the investigation."  Next, Agent Ferris explained that the investigation was about Defendant's work.

Shortly after Agent Ferris started to explain the investigation, Defendant "began to talk." Immediately, Agent Alexander interrupted Defendant and stated, "This is a voluntary interview, do you want to continue to talk?"  After Agent Alexander reiterated that the interview was voluntary, Defendant continued to speak to Agent Ferris, stating, "[y]es, I want to speak to him."

Agent Alexander acknowledged that he was aware that Defendant received benefits because of a "mental diagnosis."  Agent Alexander also recalled asking Defendant if he knew right from wrong and Defendant replying, "I knew it was wrong but how am I going to survive." In addition, Agent Alexander testified that Defendant stated, "Let me make things right, that's why God is not blessing me because I knew what I was doing was wrong."

Near the end of the interview, the agents asked Defendant to sign a written statement.  He declined to sign a statement.  With regard to refusing to sign a statement, Defendant stated that he could not read or write.  He also refused to sign a "redetermination form."  He consented to signing a release of bank records form.  At the end of the interview, the agents left the business without arresting Defendant.

As part of the interview, Agent Ferris explained that the investigation might result in a criminal prosecution.  More specifically, Agent Alexander recalled Agent Ferris explaining that

3

the results of the investigation would be presented to the United States Attorney's office and Defendant could be indicted.   Nevertheless, Defendant agreed to "comply with the investigation."

### 2. Joel Ferris

Joel Ferris, a special agent with the Social Security Administration OIG, testified that he met with Defendant in August 2015 and prepared a report of the meeting for presentation to the United States Attorney.  Agent Ferris stated that Defendant made several statements, including: (1) "I knew it was wrong but how am I going to survive;" (2) "Let me make things right;" (3) "That's why God is not blessing me because I knew what I was doing was wrong;" (4) "It is a sin, a sin.  I am glad this is over;" and (5) "Yes, I don't want to go to jail, I'll pay them back." All of these statements were documented in Agent Ferris' report.

On cross-examination, Agent Ferris testified that Defendant did not ask to talk to any attorney.  Agent Ferris also confirmed that once Defendant began to speak, Agent Alexander stopped Defendant and reminded him that the interview was voluntary.

### B. The Psychological Report

Defendant introduced the report of Michael Armour, PhD, a psychologist who evaluated Defendant for his Social Security Administration disability determination.  The parties stipulated to the authenticity of the report.  The Government objected to the admission of the report on the grounds of relevancy.  Defendant's counsel stated in response to the objection that he was most concerned with establishing through the report that Defendant's IQ was 59 and that he has a diagnosis of schizophrenia.  The Court admitted the report.

The report demonstrates that Defendant has a Full Scale IQ score of 59.  Defendant scores in the extremely low range on overall measures of his verbal comprehension, his working

memory, his processing speed, and his Full Scale IQ.  Defendant performed in the "borderline range on measures of perceptual reasoning."

**Discussion**

**A.  Custodial interview/Miranda warnings**

Defendant contends that his statements should be suppressed because he "was in custody and not given Miranda warnings."  More specifically, Defendant contends that given his "intellectual and psychological shortcomings … a reasonable person in his position would not have felt free to abandon the encounter."  The Government counters that there is no proof that Defendant "was deprived of his freedom during the encounter nor that the agents displayed their weapons or engaged in any show of force."

Before questioning a person who is interrogated while in custody,[3] Miranda requires law enforcement to advise the person of his or her right to remain silent, that any statement the person makes may be used as evidence against the person, and that the person has the right to the presence of an attorney.  Miranda, 384 U.S. at 444.  When a person is not under arrest at the time of questioning, custody for Miranda purposes exists when the circumstances demonstrate the person is "deprived of his freedom of" movement to "the degree associated with a formal arrest."  Id. (first quotation); California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (second quotation).  "Custody determinations are . . . mixed questions of law and fact which require that the entire circumstances of the particular case be carefully assessed."  United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

To ascertain whether a person is "in custody" in the absence of arrest, a court examines "the extent of the physical or psychological restraints placed on the [person] during interrogation

---

[3] The Court assumes arguendo that Agents Alexander and Ferris interrogated Defendant, because neither party addresses that Miranda prerequisite.

in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). If the suspect's belief that "his freedom of action had been curtailed [by law enforcement] to a 'degree associated with formal arrest,' and that belief was reasonable from an objective viewpoint," then the suspect was in custody during the interrogation. Id. (quoting Beheler, 463 U.S. at 1125). As articulated by the Eighth Circuit, a court's inquiry into the indicia of custody focuses on the following non-dispositive factors:

> (1)    Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349. A court must also consider whether the historical facts establish custody, keeping in mind that "[t]he ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." United States v. Czichray, 378 F.3d 822, 827-28 (8th Cir. 2004).

In support of his argument, Defendant cites a number of cases but does not demonstrate how the cases cited are relevant to the facts of this case. In particular, although Defendant cites Griffin, supra, the Eighth Circuit case generally considered to most clearly articulate clear standards for determining custodial status, he does not apply the Griffin factors to the facts of this case.

In opposition to Defendant's position, the Government relies primarily on United States v. Bordeaux, 400 F.3d 548 (8th Cir. 2005). In Bordeaux, as here, the defendant presented "his intelligence and the details of the interview as the circumstances mainly relevant…" to a

6

determination of custodial status.  Id. at 560.  The Eighth Circuit, however, characterized the "crux of this question [as] whether, viewing the circumstances as a whole, a reasonable person in Mr. Bordeaux's position would have believed that law enforcement officers had limited his or her freedom to a degree associated with formal arrest."  Id. at 559.  Affirming the district court's denial of defendant's motion to suppress, the Court stated, in words equally applicable here, as follows:

> We conclude that Mr. Bordeaux was not in custody.  The agent told Mr. Bordeaux that his participation in the interview was voluntary . . . .  He also was not subjected to any strong arm or deceptive tactics; no one menaced or tricked him. Finally, notwithstanding his low IQ, it was not reasonable for him to believe that he was in custody:  No great mental acumen was required to understand his situation.

Id. at 560.

The record here establishes that the agents entered Defendant's clothing business through an open door in the middle of the day.  The agents did not display weapons and interviewed Defendant as he stood behind a counter.   There is no evidence that the agents impeded Defendant's movement in any manner during their conversation with Defendant.  The door to the store was not locked and Defendant was not confined to a private location during the interview. The agents twice explained that the interview was voluntary.  When asked whether he wanted to continue the conversation after Agent Ferris reiterated the voluntariness of the interview, Defendant stated he did.  Defendant declined to consent to a recording of the interview as well as to provide a written statement.  However, he agreed to authorize review of his bank records.  The agents did not use strong arm tactics or deceptive methods during the exchange, and did not arrest Defendant at the conclusion of the interview.  Under the circumstances, no reasonable person, even one with limited intellectual abilities, would view himself to be in custody during the interview that occurred here.  See Bordeaux, 400 F.3d at 560.  Accordingly, the agents were

not required to provide Defendant with a <u>Miranda</u> warning before speaking with him at his store in August 2015.

**B. <u>Voluntariness of statements</u>[4]**

Defendant contends that his "will was overborne" because his IQ is "only 59." More specifically, Defendant argues he was "highly vulnerable to unscrupulous police tactics" and his increased susceptibility led him to disclose incriminating statements. Defendant describes the police tactics as including: using two agents to interview Defendant - - a "tag-team" - -; telling Defendant he was "under a criminal investigation;" appealing to Defendant's "child-like sense of conscience;" and using "treacherous sounding legal terms like 'indictment.'" The Government denies that Defendant's statements were involuntary arguing that the police conduct was not coercive and Defendant's conduct demonstrated that his statements were voluntary.

"A statement is involuntary if it was extracted by use of physical or psychological pressure that overbore [the] will" of the person making the statement. <u>Id.</u> There is no "talismanic definition of 'voluntariness,'" and a court must determine whether a statement was voluntary by looking at the totality of the circumstances. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 224-26 (1973). <u>See also United States v. Williams</u>, 793 F.3d 957, 962 (8th Cir. 2015) ("To determine whether a statement is voluntary [the Court] examine[s] the totality of the circumstances…."). "[L]ower-than-average intelligence [is a] factor[] in the voluntariness analysis." <u>United States v. Vinson</u>, 631 F.3d 476, 482 (8th Cir. 2011). Most significantly, however, the Supreme Court has explained that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'…." <u>Colorado v. Connelly</u>, 479 U.S. 157, 167

---

[4] In Defendant's opening brief, his argument on voluntariness is presented as an element of the analysis of custodial status in the context of the absence of <u>Miranda</u> warnings. In his post-hearing memorandum, Defendant argues that his involuntary confession must be suppressed as a violation of due process.

(1986).  See also Bordeaux, 400 F.3d at 560-61; United States v. Galceran, 301 F.3d 927, 931 (8th Cir. 2002) (per curiam); United States v. Robinson, 20 F.3d 320, 322 (8th Cir. 1994).  In short, "[a] statement is involuntary when it [is] extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (internal quotation marks omitted) (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)).

In support of his argument, Defendant relies primarily on United States v. Preston, 751 F.3d 1008 (9th Cir. 2014).  In Preston, the Ninth Circuit concluded that the district court erred in admitting the confession of an intellectually-impaired defendant.  Id.  The following factors, "[c]onsidered all together," convinced the court that the "defendant's will was overborne and his statement [was] involuntary":

> [the defendant's] severe intellectual impairment; the police's repetitive questioning and the threats that it would continue without end; the pressure placed on [the defendant] to adopt certain responses; the use of alternative questions that assumed his culpability; the officers' multiple deceptions about how the statement would be used; the suggestive questioning that provided details of the alleged crime; and the false promises of leniency and confidentiality ….

Id. at 1027-28.

Comparing the police tactics used in Preston to the record here, it is clear that Defendant has no basis for arguing that his "will was overborne."  The agents approached Defendant during the work day at Defendant's place of work - - a business he admittedly owned.  The store door was not locked, and the interview occurred in the public area of the store where Defendant was located when the agents entered.  The agents repeatedly told Defendant the interview was voluntary.  The agents did not "feed" Defendant details but explained the information they had and what they needed.  Defendant agreed to provide certain information and declined to provide

9

other information, demonstrating he felt comfortable not complying with the agents' requests. The record contains no evidence of deception, pressure, violence, threats or promises. <u>See</u> <u>LeBrun</u>, 363 F.3d at 724. As the Eighth Circuit stated in <u>LeBrun</u>, the standard for determining whether the surrounding circumstances overbore a defendant's will and capacity for self-determination is "very demanding." <u>Id.</u> at 726. Here, the record, including that Defendant clearly understood his circumstances and faced no police threats or undue pressure, supports the conclusion that Defendant's statements were voluntary.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress statements [Doc. 21] be **DENIED**. The parties are advised that they have **fourteen (14) days** in which to file written objections to this Recommendation pursuant to 28 U.S.C. Section 636(b)(1). Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Defendant's trial date is scheduled for **<u>August 6, 2018</u>** at **<u>8:30 a.m.</u>** before **<u>United States District Judge Catherine D. Perry</u>**.


PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of June, 2018